MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 67
Docket:        Ken-25-442
Submitted
  On Briefs:   April 22, 2026
Decided:       July 23, 2026

Panel:         CONNORS, LAWRENCE, DOUGLAS, and TAUB, JJ., and HORTON, A.R.J.

MAINE HUMAN RIGHTS COMMISSION et al.

v.

ROBERT LARKIN


LAWRENCE, J.

[¶1]  Robert Larkin appeals from a judgment entered by the Superior Court (Kennebec County, *Daniel Mitchell, J.*) enforcing a settlement agreement between Larkin, the Maine Human Rights Commission, and one of Larkin's tenants.  Larkin argues that there was no meeting of the minds at the judicial settlement conference and that it was error for the court to enforce the terms of the alleged agreement with no evidence of the parties' mutual assent.  We conclude that there was insufficient evidence for the court to find that the parties reached a full and final settlement agreement.  We therefore remand to the court to hold an evidentiary hearing to determine whether the parties reached an agreement at the conference and, if so, what the terms of the agreement were.

## I. BACKGROUND

## A.     The Underlying Litigation

[¶2]  In its order enforcing the settlement agreement, the court made the following factual findings, which were supported by competent evidence in the record except as otherwise indicated.  *See Coastal Ventures v. Alsham Plaza, LLC*, 2010 ME 63, ¶ 19, 1 A.3d 416 (quotation marks omitted).

[¶3]  On June 30, 2022, the Commission filed a complaint in the Superior Court alleging that Larkin discriminated against his tenant on the basis of sex, asserting housing discrimination claims under the Maine Human Rights Act (MHRA), 5 M.R.S. §§ 4551-4634 (2026),[1] and the Fair Housing Act (FHA), 42 U.S.C.A §§ 3601-3631 (Westlaw through Pub. L. No. 119-100).  After some time, the tenant requested a judicial settlement conference, which the court (*Mead, J.*) held on January 25, 2024.[2]  Following the conference, the court issued the settlement conference record form, which stated that "[t]he parties have agreed upon a full and final settlement of this matter.  The attorneys will

---

[1] We cite the current statutes because, although the MHRA has been amended since 2022, the amendments are not relevant to the present case.  *See, e.g.*, P.L. 2023, ch. 41, § 1 (effective Oct. 25, 2023) (codified at 5 M.R.S. § 4553 (2026)).

[2] We note that Larkin did not attend the settlement conference.  The Commission stated in its motion to enforce and in its appellate brief that Larkin's daughter and his attorney attended the conference in his stead and said that Larkin gave them full authority to settle the matter.  There is nothing in the record contemporaneous with the conference that indicates that Larkin in fact granted his daughter and his attorney authority to settle the matter.

prepare the necessary paperwork and file a notice of dismissal with prejudice in this matter in due course."

[¶4] On February 20, 2024, the court (*Lipez, J.*) entered an order requiring the parties to file docket entries within thirty days. After the court's order, the parties exchanged drafts of a settlement agreement. On March 13, 2024, Larkin sent a draft "settlement and release of claims agreement" to the tenant only, and the tenant returned the draft with nonsubstantive edits. On the same day, the Commission sent Larkin a draft settlement agreement for execution by Larkin, the tenant, and the Commission.[3] The Commission's draft agreement contained the following provisions, among others: (1) Larkin does not admit to a violation of the MHRA or the FHA; (2) Larkin "acknowledges that the MHRA and FHA prohibit discrimination or retaliation of any kind against [the tenant]"; (3) Larkin must pay the tenant $3,500; (4) Larkin will no longer be personally involved in managing his rental properties; (5) the Commission will review Larkin's housing policies; and (6) Larkin's property manager will

---

[3] Two draft agreements were created. One draft agreement—the one at issue on appeal—required execution by all three parties and was initially drafted by the Commission. The other agreement, drafted by Larkin, included a release of claims and was between only Larkin and the tenant because the Commission "couldn't sign on for" the purpose of effectuating a release between the tenant and Larkin.

4

attend fair-housing training sessions.  We refer to the last three provisions as the "public-relief terms."

[¶5]  Larkin disagreed with the language in the Commission's draft agreement that stated that he acknowledged that the MHRA and FHA prohibit discrimination or retaliation against the tenant.  Larkin believed that the language suggested that he had violated the law and, thus, contradicted the parties' agreement that Larkin would not admit liability.  On April 9, 2024, Larkin returned an edited draft that removed the acknowledgment; removed essentially any reference to discrimination, harassment, and the specific statutes; reduced the payment to the tenant to $1,000; and removed the provisions requiring Larkin's property manager to attend fair-housing training.

[¶6]  On April 29, 2024, the Commission returned a revised draft to Larkin.  The revised draft restored the key terms originally included in the March 13 draft, including the acknowledgement language, but also added several statements throughout the document emphasizing that Larkin did not agree that he violated any law.  Soon after, Larkin returned another draft and made the same edits as his April 9 draft and removed the public-relief terms altogether.

[¶7] Negotiations eventually came to a halt, and on May 13, 2024, Larkin informed the court that he no longer wished to proceed with the agreement reached at the settlement conference and instead requested a trial. The court ordered the Commission to either file a motion to enforce the settlement or inform the court that it wished to proceed to trial by May 28, 2024.

## B.     The Motion to Enforce

[¶8] The Commission filed a motion to enforce the settlement agreement on May 28, 2024. The court (*Daniel Mitchell, J.*) held a hearing on the motion to enforce on July 26, 2024. This was not an evidentiary hearing; instead, the parties provided oral arguments for the court to consider.

[¶9] On August 13, 2025, the court granted the motion to enforce in part. The court found that the parties had intended to be bound by an agreement reached at the judicial settlement conference because the settlement conference record form entered after the conference indicated that "[t]he parties have agreed upon a full and final settlement of this matter." The court reasoned that when "parties leave the memorialization of an agreement for after their settlement conference," as the parties did here, "there can be wording in their respective drafts and edits that they had not specifically

discussed," but this does not nullify the agreement and instead, at most, "creates a dispute as to whether they intended to include the term in question."

[¶10] The court then found that the basic terms of the agreement included the following: (1) Larkin will not concede liability, (2) Larkin will pay the tenant $3,500, (3) Larkin will no longer be actively involved in managing his properties, (4) Larkin will permit the Commission to review his policies and procedures, and (5) Larkin's property manager will attend a fair-housing training session. The court also found that the "acknowledgment" provision in the Commission's draft was not part of the agreement, citing Larkin's lack of a clear expression of intent to be bound by such a provision and the Commission's concession that the provision had not been discussed at the settlement conference.

[¶11] The court ordered the parties to execute an agreement consistent with the revised draft sent by the Commission on April 29, 2024, except for the paragraph requiring Larkin to acknowledge the antidiscrimination provisions of the MHRA and the FHA. The court also ordered Larkin and the tenant to execute the settlement-and-release agreement that Larkin had sent to the tenant on March 13, 2024.

[¶12]   Larkin timely appealed on September 3, 2025.   M.R. App. P.
2B(c)(1).

## II. DISCUSSION

[¶13]   Larkin challenges the court's determination that the parties
mutually assented to be bound by a settlement agreement and argues that the
court erred in finding mutual intent to be bound by the five identified terms,
particularly the public-relief terms.

[¶14] We analyze settlement agreements as contracts, and "the existence
of a binding settlement agreement is a question of fact reviewed for clear error."
*Doe v. Lozano*, 2022 ME 33, ¶ 13, 276 A.3d 44.  "For a binding agreement to
exist, the parties must have mutually intended to be bound by terms sufficiently
definite to enforce."  *Id*. (quotation marks omitted).  A court's determination
that the parties intended to be bound by an agreement is clearly erroneous only
if there is "no competent evidence in the record to support that determination."
*Est. of Snow*, 2014 ME 105, ¶ 11, 99 A.3d 278.

[¶15]  The question before us is whether there was competent evidence
to support the court's finding that the parties mutually intended to be bound by
an agreement and that the agreement consisted of the five terms that the
Commission   asserts   were   discussed   at   the   settlement   conference.

"'[I]n circumstances where litigants dispute whether an enforceable settlement was reached outside the presence of the court, findings of fact regarding the terms of the agreement and the parties' intent may be required.'" *Id.* ¶ 19 (quoting *Muther v. Broad Cove Shore Ass'n*, 2009 ME 37, ¶ 6, 968 A.2d 539). It is within the trial court's discretion whether to hold an evidentiary hearing to gather evidence to make such findings. *Id.* ¶ 18.

[¶16] In previous cases, we have reviewed whether there was competent evidence to support the enforcement of a settlement agreement and whether an evidentiary hearing was necessary for the court's fact finding. *See, e.g., Bahn v. Small*, 2019 ME 69, ¶¶ 4, 7-8, 207 A.3d 1211; *Est. of Snow*, 2014 ME 105, ¶¶ 19-21, 99 A.3d 278; *Muther*, 2009 ME 37, ¶¶ 6-8, 968 A.2d 539; *Marie v. Renner*, 2008 ME 73, ¶¶ 7-10, 946 A.2d 418; *White v. Fleet Bank of Me.*, 2005 ME 72, ¶¶ 11-13, 875 A.2d 680. For example, in *Muther*, we affirmed the trial court's finding of a binding settlement agreement where the transcript of the settlement conference was part of the record before the trial court and the transcript of the parties' express stipulations of the terms reflected the parties' agreement. 2009 ME 37, ¶¶ 4, 6-8, 968 A.2d 539. In *Marie*, however, we remanded the case to the trial court to conduct an evidentiary hearing because

the record contained only the parties' filings, which were ambiguous. 2008 ME 73, ¶¶ 8-10, 946 A.2d 418.

[¶17] Here, in the absence of an evidentiary hearing, there is an insufficient factual record to support the court's determination that the parties mutually agreed to be bound by an agreement and that the agreement included the five terms identified by the Commission. There is no recording or transcript of the settlement conference, nor are there any kind of detailed contemporaneous written notes of what occurred at the settlement conference other than the brief notation on the settlement conference record form, the attorneys' affidavits of what generally occurred, and the parties' arguments made at the July 26 hearing.

[¶18] The evidence from the attorneys' affidavits and filings is at best ambiguous and paints such an incomplete picture of what occurred at the conference that it could not sufficiently support the court's findings; much of what the Commission presents as evidence is instead comprised of nontestimonial assertions and unsworn statements.[4] *See id*. ¶¶ 7, 9-10. The

---

[4] The Commission attorney's affidavit notes the "three-hour fair housing training that had been discussed during the [settlement conference]" and the "review and revision . . . of [Larkin's] housing policies," but does not mention the requirement that Larkin no longer actively manage his properties. Larkin's attorney's affidavit states that "there was discussion regarding public interest remedies" but does not state what the remedies were. The attorneys' references to "discussions" are at best ambiguous as to whether there was any meeting of the minds on the topics "discussed."

notation on the settlement conference record form that "[t]he parties have agreed upon a full and final settlement" is insufficient on its own because it lacks explication of the definite terms of the parties' agreement, and definite terms are necessary to establish the existence of a binding agreement. *See Lozano*, 2022 ME 33, ¶ 13, 276 A.3d 44; *Bahn*, 2019 ME 69, ¶¶ 7-8, 207 A.3d 1211; *cf. White*, 2005 ME 72, ¶ 12, 875 A.2d 680 (holding that there was ample evidence in the record from the witnesses' testimony at the evidentiary hearing for the court to find that the parties reached an agreement with definite material terms). Without competent evidence, the court could not properly determine that there was a meeting of the minds as to the existence of the settlement agreement and its express terms, and thus, the court clearly erred. *See Bahn*, 2019 ME 69, ¶¶ 2, 7-8, 207 A.3d 1211 (vacating an order enforcing a settlement agreement and remanding for a testimonial hearing as to the existence of an agreement and its substance because the record contained insufficient evidence, even though the court previously "stated on the record that an agreement was reached on all points"); *Marie*, 2008 ME 73, ¶¶ 8-10, 946 A.2d 418. Given the lack of record evidence, an evidentiary hearing is required

---

The Commission points to several nontestimonial and unsworn statements, and arguments made to the trial court by the attorneys, to support its argument that there was mutual assent for the material terms. However, none of these statements are evidence upon which the court could base its findings.

for the court to engage in further fact finding.  *Est. of Snow*, 2014 ME 105, ¶ 19, 99 A.3d 278; *Marie*, 2008 ME 73, ¶ 10, 946 A.2d 418.

[¶19]  We therefore vacate the judgment and remand to the Superior Court for an evidentiary hearing to determine whether the parties reached a binding agreement at the settlement conference and, if so, what were the agreed-upon terms of said agreement.

The entry is:

> Judgment vacated.  Remanded for further
> proceedings consistent with this opinion.

---

Mark C. Preiss, Esq., Gordon Rees Scully Mansukhani, LLP, Boston, Massachusetts, for appellant Robert Larkin

Barbara Archer Hirsch, Esq., Colin R. Hurd, Esq., and Michael Spalding, Esq., Maine Human Rights Commission, Augusta, for appellees Maine Human Rights Commission and the tenant

Kennebec County Superior Court docket number CV-2022-122
FOR CLERK REFERENCE ONLY